UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER LEE OZIER,

        Petitioner,

                                  Case No. 16-cv-12879

v.

                                  HON. MARK A. GOLDSMITH

SHANE JACKSON,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Roger Lee Ozier, presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his conviction for bank robbery, Mich. Comp. Laws § 750.531; armed robbery, Mich. Comp. Laws § 750.529; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, but grants Petitioner leave to appeal in forma pauperis.

### I. BACKGROUND

Petitioner's conviction arises out of the robbery of a credit union in Blackman Township, Michigan, on October 8, 2012.

Laura Hayes was the branch manager at Aeroquip Credit Union on October 8, 2012. 4/29/2013 Trial Tr. at 121 (Dkt. 6-3). During the morning, a person entered the credit union wearing a hoodie, Halloween mask, and sunglasses. The person approached teller Tammy

Walker with a hand inside the right-hand pocket of the hoodie and demanded money. Walker gave the robber between four and five thousand dollars. Hayes called the police less than a minute after the robber exited the bank. The police arrived within a minute or two of being called. The bank's video surveillance system was given to the police. Id. at 124-128. Although Hayes could not give any identifying characteristics of the perpetrator — because the robber was completely covered — Hayes did indicate that the perpetrator was between five and six feet tall and 160 to 180 pounds. Id. at 129, 132.

Walker testified that she worked as a teller at the credit union on the day in question. Id. at 140-141. Shortly after the credit union opened, an individual wearing a mask, gloves, sunglasses, and a hoodie came inside. Based on his voice, Walker believed the perpetrator to be an African-American male. Id. at 146, 155. The person had his hand in his pocket, leading Walker to conclude that the perpetrator was armed. Id. at 142-143, 146, 153. The man told Walker three times to "put [her] hands on the counter" and demanded money. Id. at 144, 158. Scared, Walker turned over credit union funds. The man took out his right hand to retrieve some of the money, the total amount of which Walker believed was $3,610.00. Id. at 144-145.

Located two blocks south of the credit union was the Wildwood Auto Wash, where Allen Miracle was an employee. On the morning of the incident, Miracle noticed a car around 9:00 a.m. in one of the bays at the car wash. The person did not use the bay for a car wash, but threw away some trash. Miracle spoke with the police after the robbery and gave them surveillance video, described below, which was played for the jury. Id. at 163-166, 168-169, 176, 180.

Detective Robert Shrock of the Blackman-Leoni Department of Public Safety testified that he was called in the day after the robbery and viewed the surveillance video of the car wash. Id. at 181-183. Detective Shrock testified that the surveillance video showed the car leaving the

car wash and turning toward the credit union. Once the car parked, another surveillance camera captured a man getting out of the passenger side of the vehicle wearing a red tee-shirt with "Real Men Wear Red" written on it. Id. at 190-193.

Gina Gettel of the Michigan State Police was dispatched to the crime scene. Gettel obtained the video surveillance evidence from the car wash, as well as from Daniel Hattey, whose home was located across the street from the credit union and was equipped with an exterior video surveillance system. Gettel noted that the vehicle at the car wash and in Hattey's video were the same make and model. The car wash video footage showed two subjects exiting the vehicle and throwing away trash. Gettel could not identify the persons from the video tape. Id. at 195-200, 206-211, 222. Gettel later did a trash pull from that container and recovered a piece of paper with an address on it of Shirley Brown, 101 Francis Court, Jackson, Michigan. Id. at 211-212, 221, 228. One of the items recovered was a falsified temporary paper plate from the Secretary of State. Video surveillance showed a person taping a white piece of paper to the back window of the suspect vehicle before the car left the car wash bay. Id. at 213-214. A partial plate was determined from the video surveillance. It was a Michigan handicapped plate with "122" on it, and the vehicle appeared to be a silver Ford. Id. at 220, 232.

Trooper Scott Watson assisted in the investigation of the bank robbery. Through his investigation, he learned that the name of the person who exited the passenger side of the vehicle was determined to be Roger Ozier. Petitioner's house was searched pursuant to a search warrant. Trooper Watson admitted that Petitioner was not the first suspect in this case. Id. at 235-239.

Detective Christopher Boulter of the Blackman-Leoni Township Police Department responded to the scene shortly after the robbery occurred. Detective Boulter testified that there had been a number of other bank robberies in the Jackson County area. 4/30/2013 Trial Tr. at 5-

6, 8-9 (Dkt. 6-4). Boulter obtained the surveillance video from Hattey's house and sent officers to retrieve the video from the car wash. Detective Boulter stated that a credit union customer, identified as Mark Wecker, followed the robber out of the building and identified the suspect's vehicle as a "gray or silver vehicle." Id. at 11, 32. From viewing the car wash video, Detective Boulter saw a suspect wearing a light jacket and an orange or red tee-shirt underneath, blue jeans, and tennis shoes put on a grey hooded sweatshirt. Id. at 13-14. A fake license plate was recovered out of a trash bin, which led to an address and an individual named Otis Brown. Brown's address matched a handicap license plate of "1-2-2-9-E," which was assigned to a vehicle that matched the description of the car seen driving away from the credit union. Id. at 16. Further investigation led Detective Boulter to believe that Darius Griffin, Brown's grandson, was the driver of the vehicle. A search warrant was obtained and executed on Brown's residence. Id. at 17, 21.

A few days later, a detective received a tip that Petitioner was the passenger in the vehicle and the suspected robber of the Aeroquip Credit Union. A search warrant was obtained and executed on Petitioner's residence. A tee-shirt and a pair of gym shoes similar to those worn by one of the car's occupants on the car wash video was recovered from Petitioner's residence. Id. at 22-26.

Griffin and Petitioner were arrested. In exchange for a plea bargain, Griffin agreed to testify against Petitioner. Griffin told the police that he and Petitioner went to a motel and rented a room using money from the robbery. Detective Boulter testified that documentation was obtained corroborating that Griffin rented a room at the motel on October 8, 2012. Id. at 29-31, 51. A search of the suspect vehicle found no money or masks. A search of Petitioner's residence found no hoodie, no money, and no masks. Id. at 47-48.

Prior to trial, defense counsel objected to Denise Welhusen, Petitioner's parole officer, giving identification testimony, claiming that it would be more prejudicial than probative. The judge overruled the objection but ruled that Welhusen could not testify about her job or specifically how she knew Petitioner. 4/29/2013 Trial Tr. at 4-7. Welhusen testified that she worked in the Jackson County area and had previous contact with Petitioner through her employment on several occasions. Welhusen was shown video from the car wash and positively identified Petitioner as one of the men who threw trash away. 4/30/2013 Trial Tr. at 67-69.

During trial, Griffin testified that he lived with his grandparents, and that Brown, his grandfather, owned a silver or grey Ford Fusion, which Griffin had permission to drive. Griffin further testified that Petitioner was a "distant family member." Id. at 78-79. Griffin testified that he and Petitioner began planning the robbery a week earlier. According to Griffin, the robbery was Petitioner's idea. The men drew a fake temporary license plate that they ended up not using. On the morning of the robbery, Griffin picked up Petitioner from his residence and drove the men to the bank. Griffin stopped the car at a car wash and threw away a bag and the paper license plate. The men made another paper plate and Griffin put it on the vehicle. The actual license plate was sitting on the back. Griffin testified that neither man had a weapon. Griffin put on a hoodie, gloves, and a mask. Griffin remained in the vehicle while Petitioner went into the credit union. Petitioner returned 30 seconds later and Griffin drove the two men to a Motel 6, where Griffin registered with money that Petitioner gave him. Id. at 81-90, 96, 100. In exchange for his testimony against Petitioner, Griffin pled guilty to the lesser crime of unarmed robbery. Id. at 80, 97, 102.

Petitioner's conviction was affirmed on appeal. People v. Ozier, No. 317217, 2014 WL 6468105 (Mich. Ct. App. Nov. 18, 2014) (per curiam), leave denied, 863 N.W. 2d 69 (Mich.

2015). Petitioner then filed a post-conviction motion for relief from judgment (Dkt. 6-8), which

was denied. People v. Ozier, No. 12-004931-FH (Jackson Cty. Cir. Ct. Oct. 29, 2015) (Dkt. 6-

11). The Michigan appellate courts denied Petitioner's post-conviction appeal. People v. Ozier,

No. 330360 (Mich. Ct. App. Jan. 29, 2016) (Dkt. 6-12), leave denied, 499 Mich. 930, 878 N.W.

2d 857 (Mich. 2016) (Dkt. 6-13).

Petitioner seeks a writ of habeas corpus on the following eight grounds:

i. "Roger Lee Ozier is entitled to a writ of habeas corpus because of admission of irrelevant and unduly prejudicial evidence of an uncharged and unrelated act, never shown to have involved Mr. Ozier, deprived him of due process of law under the Michigan Constitution and the Fourteenth Amendment of the United States Constitution."

ii. "Roger Lee Ozier is entitled to habeas relief because the evidence presented at trial was insufficient under Jackson v. Virginia, 443 U.S. 307 (1979) to sustain Mr. Ozier's convictions for bank robbery and armed robbery."

iii. "Roger Lee Ozier is entitled to habeas relief because he was denied his Sixth Amendment right to confrontation and defense trial counsel was ineffective in failing to object to the statements made by an eyewitness to police who failed to testify at trial."

iv. "Roger Lee Ozier is entitled to habeas relief because he was denied his Sixth Amendment right to confrontation, Crawford v. Washington, 124 S. Ct. 1354 (2004) and United States v. Calhoun, 544 F.2d 291 (6th Cir. 1976), when trial attorney could not effectively cross-examine Petitioner's parole agent about possible motives his parole agent might harbor in positively identifying him [on] a surveillance video."

v. "Roger Lee Ozier is entitled to habeas relief because he was denied his Sixth Amendment right to confrontation and defense trial counsel was ineffective in failing to object to the statements made by Detective Stiles to Task Force Sgt. Chris Boulter regarding an informant's tip accusing petitioner of bank robbery."

vi. "Roger Lee Ozier is entitled to habeas relief because he was denied his fundamental right to due process protections when the police and prosecution failed to have analyzed crucial evidence which was material to identified and would have exonerated Mr. Ozier."

vii. "Roger Lee Ozier is entitled to habeas relief because he was denied his Sixth Amendment when trial counsel was constitutionally ineffective for failing to investigate and calling to trial, Mark Wecker, a res gestae witness whose testimony would prove to be exculpatory for [the] defense and appellate counsel [was ineffective] for failing to investigate and raising issue on direct appeal."

viii. "Roger Lee Ozier is entitled to habeas relief because he was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to challenge Mr. Ozier's arrest without probable cause, creating a radical defect rendering the proceeding void and appellate counsel [was ineffective] for failing to raise issue on direct appeal."

Pet. at 2-3.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." <u>Id.</u> at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id.</u> Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. <u>See</u> <u>Wetzel v. Lambert</u>, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington,</u> 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it

preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id.  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.  ANALYSIS

### A.  Claim One:  The Prejudicial Bad Acts Evidence Claim

Petitioner first claims that the prosecutor deprived him of a fair trial by introducing irrelevant and prejudicial evidence when Detective Boulter testified about uncharged bank robberies in Jackson County, Michigan, which Petitioner argues were introduced for the sole purpose of showing that Petitioner had the propensity to commit the bank robbery in this case.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial "other acts" evidence against him in violation of Michigan Rule of Evidence 404(b)

cannot form the basis for habeas relief, because it involves a state-law evidentiary issue. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions," because a federal habeas court is limited to deciding whether a state-court conviction violates the Constitution, laws, or treaties of the United States.); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) (There is no clearly established Supreme Court precedent that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence.); Bey v. Bagley, 500 F.3d 514, 519 (6th Cir. 2007) (petitioner's claim that the state trial court's admission of "other acts" evidence violated state law "is simply not cognizable on habeas review"); Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court). Therefore, Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim Two:  The Sufficiency-of-the-Evidence Claim**

Petitioner next claims that there was insufficient evidence to establish his identity as the person who robbed the credit union.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 318-319 (emphasis in the original).

Moreover, a federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the <u>Jackson</u> standard. <u>See</u> <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." <u>Id.</u> Indeed, for a federal habeas court reviewing a state-court conviction, "the only question under <u>Jackson</u> is whether that finding was so insupportable as to fall below the threshold of bare rationality." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2065 (2012).

On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983). It is the province of the fact finder to weigh the probative value of the evidence and resolve any conflicts in testimony. <u>Neal v. Morris</u>, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court, therefore, must defer to the fact finder for its assessment of the credibility of witnesses. <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. <u>Walker v. Russell</u>, 57 F.3d 472, 475 (6th Cir. 1995).

Petitioner claims that there was insufficient evidence to establish his identity as the robber because none of the persons in the bank could identify him as the perpetrator, and the sole

evidence against him was the testimony of Griffin, Petitioner's co-defendant, whose credibility was suspect because he testified against Petitioner in exchange for a plea bargain.

Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." Byrd v. Tessmer, 82 F. App'x. 147, 150 (6th Cir. 2003) (citing People v. Turrell, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)). Eyewitness identification of a defendant is not necessary because identify can be inferred through circumstantial evidence. See Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000).

The Michigan Court of Appeals rejected Petitioner's claim:

> In this case, a participant in the planning and execution of the robbery, Darius Griffin, described defendant's participation in the robbery. Griffin also viewed surveillance videos and identified defendant as the person depicted exiting the vehicle, walking to the credit union, and then returning. Defendant argues that Griffin's testimony was not reliable because of a favorable plea bargain he received. Griffin was arrested for robbing the credit union and agreed to cooperate with law enforcement in exchange for a reduced charge of unarmed robbery with recommended sentence within the guidelines. The jury learned of Griffin's plea bargain and was thus able to assess his credibility in light of it. We will not interfere with the trier of fact's role in determining the credibility of witnesses.
>
> Additionally, two witnesses pointed out on a surveillance video that the person identified as defendant exited the vehicle involved in the robbery wearing a red T-shirt displaying a particular phrase and then putting on a hooded sweatshirt. Bank employees stated the perpetrator of the robbery wore a hooded sweatshirt, and a search of defendant's registered address produced a T-shirt matching that seen in the video. The primary police investigator also testified that defendant's appearance matched the appearance of the passenger of a car pictured in a video obtained from a car wash near the credit union. Further, parole officer Denise

> Welhusen, testified she recognized defendant's face and his gait as
> he walked.

Ozier, 2014 WL 6468105, at * 2.

The Michigan Court of Appeals' decision was not unreasonable. "[I]t is well-settled that uncorroborated testimony of an accomplice" is sufficient to support a criminal conviction. See United States v. Graham, 622 F.3d 445, 448 (6th Cir. 2010). Griffin's testimony, if believed, would be sufficient to sustain Petitioner's conviction. Moreover, attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. See Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency-of-evidence claims. See Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000). To the extent that Petitioner challenges the credibility of Griffin, he would not entitled to habeas relief. See Tyler v. Mitchell, 416 F.3d 500, 505 (6th Cir. 2005).

In addition, there was additional circumstantial evidence linking Petitioner to the robbery. Petitioner was identified by two witnesses on a surveillance video as the person who exited the vehicle used in the robbery and wearing a red tee-shirt displaying a particular phrase before putting on a hooded sweatshirt. Both Hayes and Walker testified that the robber wore a hooded sweatshirt. A police search of Petitioner's residence recovered a tee-shirt that matched that seen in the video. The primary police investigator testified that Petitioner's appearance matched the appearance of the passenger of the car seen in the surveillance video obtained from the car wash near the credit union. Finally, Welhusen testified she recognized Petitioner's face and his gait as he walked from the surveillance videotape.

Because there were multiple pieces of evidence to establish Petitioner's identity as the perpetrator of the robbery, the Michigan Court of Appeals did not unreasonably apply Jackson v.

<u>Virginia</u> in rejecting Petitioner's sufficiency-of-evidence claim.  See <u>Moreland v. Bradshaw</u>, 699

F.3d 908, 919-921 (6th Cir. 2012).  Therefore, Petitioner is not entitled to relief on his second

claim.

### C. Claims Three, Five, Seven, and Eight: The Ineffective-Assistance-of-Counsel/Confrontation Clause Claims

For efficient presentation of the issues, the Court consolidates Petitioner's ineffective

assistance of trial and appellate counsel claims and also discusses Petitioner's related

Confrontation Clause claims.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must

demonstrate that, considering all of the circumstances, counsel's performance was so deficient

that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome

a strong presumption that counsel's behavior lies within the wide range of reasonable

professional assistance.  <u>Id.</u>  In other words, Petitioner must overcome the presumption that,

under the circumstances, the challenged action might be sound trial strategy.  <u>Id.</u> at 689.  Second,

the defendant must show that such performance prejudiced his defense.  <u>Id.</u>  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  The

Supreme Court's holding in <u>Strickland</u> places the burden on the defendant who raises a claim of

ineffective assistance of counsel to show a reasonable probability that the result of the

proceeding would have been different, but for counsel's allegedly deficient performance; the

state has no burden to show the absence of such probability.  See <u>Wong v. Belmontes</u>, 558 U.S.

15, 27 (2009).  The <u>Strickland</u> standard applies as well to claims of ineffective assistance of appellate counsel.  <u>See</u> <u>Whiting v. Burt</u>, 395 F.3d 602, 617 (6th Cir. 2005).

Further, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'"  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland's</u> standard."  <u>Harrington</u>, 562 U.S. at 101.  Indeed, "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  <u>Knowles</u>, 556 U.S. at 123 (citing <u>Yarborough v. Alvarado</u>, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a <u>Strickland</u> claim brought by a habeas petitioner.  <u>Id.</u>  This means that, on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself."  <u>Harrington</u>, 562 U.S. at 101.  "Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Id.</u> at 105.

In his third claim, Petitioner argues that his right to confrontation was violated when Detective Boulter testified that Mark Wecker informed him that the vehicle used in the robbery was grey or silver in color.  In his fifth claim, Petitioner alleges that his right to confrontation was violated when Detective Boulter testified that Detective Stiles told him that he received an anonymous tip that Petitioner was the person who robbed the credit union.  Petitioner claims that trial counsel was ineffective for failing to object to Detective Boulter's testimony in both instances.

The Michigan Court of Appeals agreed that, in both instances, the admission of this testimony violated Petitioner's right to confrontation and that counsel was deficient for failing to object. Ozier, 2014 WL 6468105, at *3-4. The Michigan Court of Appeals concluded, however, that Petitioner was not prejudiced by counsel's failure to object in light of the additional evidence against Petitioner:

> We conclude, therefore, defendant's trial counsel should have objected to the admission of this testimony and was deficient in failing to do so. However, defendant has not shown that either the evidentiary errors or counsel's failure to object affected his substantial rights, i.e., the errors did not affect the outcome of the trial. In this case, defendant's vehicle was independently identified from a surveillance video of a nearby car wash. Police recovered mail in a trash can at the car wash and a partial plate number from the surveillance video that also led to identification of the registered owner and address of the vehicle. Thus, there were other sources of identification of the vehicle presented to the jury. Similarly, evidence of an informant's tip identifying defendant as the perpetrator of the credit union robbery was harmless in light of the testimony of other witnesses that established defendant's involvement in the robbery.

Id. at *4.

The Michigan Court of Appeals' decision is sustainable based on a harmless error analysis, without undertaking a merits analysis of the claim. "Unless its jurisdiction is at stake, a federal district court on federal habeas review 'may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions.'" Dittrich v. Woods, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009), aff'd in part and rev'd in part on other grounds, 419 F. App'x. 573 (6th Cir. 2011) (quoting Aleman v. Sternes, 320 F.3d 687, 691 (7th Cir. 2003)). When a federal court is confronted with several possible grounds for adjudicating a case, any of which would lead to the same disposition of the case, "a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues." Id. (citing United States v. Allen, 406 F.3d 940, 946 (8th

Cir. 2005)).  Therefore, a federal district court on habeas review of a state-court conviction can proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so."  Id. (citing Porter v. Horn, 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003)).  Because of the compelling evidence of guilt in this case, the Court will move directly to the issue of harmlessness as to any potential error with respect to the Confrontation Clause claims.  See, e.g., United States v. Cody, 498 F.3d 582, 587 (6th Cir. 2007).

Confrontation Clause violations are subject to harmless error review.  See Bulls v. Jones, 274 F. 3d 329, 334 (6th Cir. 2001).   On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967).  In Mitchell v. Esparza, the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "objectively unreasonable manner."  540 U.S. 12, 18 (2003) (per curiam).

However, in Brecht v. Abrahamson, the Supreme Court held that, for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  507 U.S. 619, 637 (1993).  "Citing concerns about finality, comity, and federalism," the Supreme Court in Brecht "rejected the Chapman standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions."  Fry v. Pliler, 551 U.S. 112, 116 (2007) (citing Kotteakos v. United States, 328 U.S. 750 (1946)).  The Supreme Court in Brecht indicated that application of the Chapman harmless error test by a federal court reviewing

a state-court conviction on habeas review would undermine a state's "interest in finality," would infringe upon a state's sovereignty over its own criminal matters, "would undercut the historic limitation of habeas relief to those who had been 'grievously wronged,'" and would impose "'significant 'social costs.'" Id. at 117 (quoting Brecht, 507 U.S. at 637). Thus, Brecht's more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state-court conviction, regardless of whether the state courts engaged in a harmless error analysis of a petitioner's claims. Id. at 121-122.

In the aftermath of Fry, the Sixth Circuit has concluded that the Brecht standard is always the test to apply to determine whether an error was harmless and it is, thus, no longer necessary for a habeas court to ask whether the state court unreasonably applied the Chapman harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. Ruelas v. Wolfenbarger, 580 F.3d 403, 412 (6th Cir. 2009); Wilson v. Mitchell, 498 F.3d 491, 503 (6th Cir. 2007); Vasquez v. Jones, 496 F.3d 564, 575 (6th Cir. 2007). The Sixth Circuit observed that, in light of the Supreme Court's holding in Fry, "a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable' — Brecht handles the work on this, too." Ruelas, 580 F.3d at 412. However, although noting in Ruelas that the Supreme Court's holding in Fry "subsumes" the holding in Esparza, the Sixth Circuit further observed the Supreme Court did not overrule Esparza. Id. at 413. Thus, a federal court on habeas review of a state-court decision remains free to determine whether the state court's Chapman harmless error analysis was reasonable. If it was, than the claim should be denied. Id. However, a federal court is also free to proceed directly to use the Brecht test to determine whether the error was harmless. Id.

Assuming that it was erroneous to permit Detective Boulter to testify that Mark Wecker had identified the suspect vehicle's color, and that an anonymous informant had identified Petitioner as the perpetrator, the errors were harmless in light of the additional evidence against petitioner. Griffin testified to Petitioner's involvement in the robbery and to driving the suspect vehicle, which matched Wecker's description of the vehicle used in the robbery. Brown, Griffin's grandfather, testified that he owned a vehicle that matched the description of this vehicle. The surveillance video showed a person identified as Petitioner exiting the vehicle involved in the robbery wearing a red tee-shirt, which displayed a particular phrase before putting on a hooded sweatshirt. Hayes and Walker testified that the perpetrator of the robbery wore a hooded sweatshirt. A police search of Petitioner's residence produced a tee-shirt matching the one seen in the video. The primary police investigator also testified that Petitioner matched the appearance of the passenger of a car pictured in a video obtained from a car wash near the credit union. Welhusen, Petitioner's parole officer, testified she recognized Petitioner's face and his gait as he walked from the videotape. In particular, when "viewed through the deferential lens of AEDPA, the state court's harmlessness ruling must stand" because, based on the record in this case, the Michigan Court of Appeals reasonably rejected any potential error in the admission of the out-of-court statements as harmless error. See Kennedy v. Warren, 428 F. App'x. 517, 522, 523 (6th Cir. 2011). Therefore, Petitioner is not entitled to habeas relief on any Confrontation Clause claims.

The Court also rejects Petitioner's related ineffective assistance of trial counsel claims. "The prejudice prong of the ineffective assistance analysis subsumes the Brecht harmless-error review." Hall v. Vasbinder, 563 F.3d 222, 236 (6th Cir. 2009). This Court already determined that the admission of the out-of-court statements was harmless error. Because the admission of

this evidence was harmless error, Petitioner cannot satisfy <u>Strickland</u>'s prejudice requirement. <u>See, e.g.</u>, <u>Bell v. Hurley</u>, 97 F. App'x. 11, 17 (6th Cir. 2004). Therefore, Petitioner is not entitled to relief on his third and fifth claims.

In his seventh claim, Petitioner contends that trial counsel was ineffective for failing to call Wecker to testify, who was a customer of the bank. Petitioner claims that Wecker identified the bank robbery suspect as being Caucasian. Petitioner argues that Wecker's testimony would have exonerated Petitioner, because he is an African-American. The Court finds that Petitioner is not entitled to relief on this claim for several reasons.

First, Petitioner neither attached to his petition an affidavit or statement from Wecker concerning his proposed testimony, nor did Petitioner attach any such evidence to his post-conviction motion for relief from judgment or his post-conviction appeals, where he raised the claim.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. <u>See</u> <u>Workman v. Bell</u>, 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, Petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. <u>See</u> <u>Cooey v. Coyle</u>, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavit sworn by Wecker. Petitioner has not offered, either to the Michigan courts or to this Court, any evidence beyond his own assertions as to whether Wecker would have testified that the perpetrator was Caucasian. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Wecker to testify at trial, so as to support the

second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F.3d 551, 557 (6th Cir. 2007).

Second, although counsel did not call Wecker to testify, he did introduce evidence that Wecker had identified the perpetrator as being Caucasian. During the cross-examination of bank manager Hayes, defense counsel successfully admitted into evidence as a defense exhibit a "robbery packet" that Hayes filled out after the robbery and later gave to the police officers. Hayes indicated that the information in this packet included a description of the suspect. Hayes further indicated that the information showed that Wecker was in the bank at the time of the robbery. The packet was admitted as a business-records exception to the hearsay rule and the prosecutor did not object to the admission of this evidence. 4/29/2013 Trial Tr. at 135-138. Later, in closing argument, defense counsel brought up Hayes' robbery packet and pointed out that Wecker had identified the robbery suspect as being Caucasian. 4/30/2013 Trial Tr. at 133.

Petitioner's counsel was able to present evidence that Wecker identified the suspect as Caucasian, thus, any testimony from Wecker in court would have been cumulative to the statement that he made to Hayes. Because counsel was able to get Wecker's identification of the suspect into evidence through his statement to bank personnel, counsel was not ineffective in failing to call Wecker to testify. See Robinson v. Graham, 671 F. Supp. 2d 338, 351 (N.D.N.Y. 2009) (counsel's decision not to call as witness police officer who rode in ambulance with victim and who prepared police report regarding conversation with victim as to who assaulted him was matter of reasonable trial strategy that did not support claim of ineffective assistance of counsel; officer's report was read into record, the most that the officer could have done was confirm that he prepared the report and that the report accurately reflected what the victim stated, or that he

had no present recollection of victim's statement, and counsel feared that officer might have given testimony that was detrimental to petitioner).

In his eighth claim, Petitioner contends that trial counsel was ineffective for failing to object to the legality of his arrest. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." United States v. Crews, 445 U.S. 463, 474 (1980) (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975)); see also Frisbie v. Collins, 342 U.S. 519 (1952); Ker v. Illinois, 119 U.S. 436 (1886). The Supreme Court held that "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the Constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." Crews, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest. Thus, the mere fact that Petitioner may have been illegally arrested would not prevent him from being prosecuted and convicted of this offense. Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. See Goldsby v. United States, 152 F. App'x. 431, 438 (6th Cir. 2005). A challenge to the legality of Petitioner's arrest would not have resulted in his release from custody. Counsel was not ineffective for failing to file a motion to dismiss on this basis. See Friday v. Pitcher, 200 F. Supp. 2d 725, 738-739 (E.D. Mich. 2002).

Petitioner argues further in his seventh and eighth claims that appellate counsel was ineffective for failing to raise on Petitioner's appeal of right the two ineffective assistance of trial counsel claims that Petitioner raises in his seventh and eighth claims.

This Court has already determined that trial counsel was not ineffective. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)). Because trial counsel was not ineffective, appellate counsel was not ineffective in failing to raise these claims on Petitioner's appeal of right. See, e.g., Fautenberry v. Mitchell, 515 F.3d 614, 642 (6th Cir. 2008). Therefore, Petitioner is not entitled to relief on his seventh and eighth claims.

### D. Claim Four: The Confrontation Clause Claim

Petitioner next contends that his right to confrontation was violated by permitting Welhusen to identify Petitioner as the perpetrator, because counsel could not effectively cross-examine Welhusen about her motives for positively identifying Petitioner without revealing that she was Petitioner's parole agent, which would have admitted prejudicial evidence that Petitioner was on parole.

In support of his claim, Petitioner points to the case of United States v. Calhoun, 544 F.2d 291, 294 (6th Cir. 1976), in which the Sixth Circuit held that the trial court abused its discretion in admitting lay opinion testimony from the defendant's parole officer identifying him as the robber shown in photographs, in the absence of a showing of necessity for using the probation officer instead of some other witness, because the defendant could not freely examine the relationship between the defendant and the parole officer without revealing the prejudicial fact

that defendant was on probation at time of the robbery. This Court concludes that the Sixth Circuit's ruling in Calhoun does not entitle Petitioner to habeas relief.

First, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state-court decision is contrary to, or an unreasonable application of, clearly established federal law. See Miller v. Straub, 299 F. 3d 570, 578-579 (6th Cir. 2002). Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012). The Supreme Court has yet to rule that having a defendant's parole officer offer identification testimony violates a defendant's right to confrontation simply because the defendant would be forced to reveal his or her parole status in order to cross-examine the parole officer. Thus, there is no clearly established Supreme Court law that would suggest that the admission of Welhusen's testimony violated Petitioner's right to confrontation.

Second, every other federal circuit that has addressed the issue has rejected the holding in Calhoun. See United States v. Contreras, 536 F.3d 1167, 1171-1172 (10th Cir. 2008), cert. denied, 555 U.S. 1117 (2009); United States v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993); United States v. Stormer, 938 F.2d 759, 763-64 (7th Cir. 1991); United States v. Allen, 787 F.2d 933, 937 (4th Cir. 1986), vacated on other grounds, 479 U.S. 1077 (1987); United States v. Farnsworth, 729 F.2d 1158, 1161 (8th Cir. 1984).

A disagreement between the circuit courts is evidence that a certain matter of federal law is not clearly established for federal habeas purposes. See Miller v. Colson, 694 F.3d 691, 698 (6th Cir. 2012), cert. denied, 133 S. Ct. 2739 (2013). The Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" between the federal courts concerning the

resolution of this issue, precludes this Court from finding that the Michigan Court of Appeals' decision in rejecting Petitioner's confrontation claim was an unreasonable application of clearly established federal law.  See Worden v. McLemore, 200 F. Supp. 2d 746, 752-753 (E.D. Mich. 2002).

Finally, as the Michigan Court of Appeals noted in rejecting Petitioner's claim, Petitioner was able to cross-examine Welhusen about various issues that challenged the reliability of her identification of Petitioner.  See Ozier, 2014 WL 6468105, at *3 n.1.

"[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish."  United States v. Owens, 484 U.S. 554, 559 (1988).  Petitioner was able to adequately cross-examine Welhusen and attempt to impeach her identification of petitioner.  Therefore, Petitioner is not entitled to relief on his fourth claim.

### E.  Claim Six:  The Destruction-of-Evidence Claim

Last, Petitioner contends that his right to a fair trial was violated when the police failed to test material recovered from the car wash trash bin for fingerprints and DNA.

The prosecutor in a criminal case "do[es] not have a constitutional duty to perform any particular test."  Coy v. Renico, 414 F. Supp. 2d 744, 777 (E.D. Mich. 2006) (quoting Arizona v. Youngblood, 488 U.S. 51, 59 (1988)).  Indeed, the Due Process Clause is not violated simply because "the police fail to use a particular investigatory tool."  Youngblood, 488 U.S. at 59.  Thus, the failure to test the evidence in this case for fingerprints or DNA does not amount to a constitutional violation.  Coy, 414 F. Supp. 2d at 777.  Moreover, Petitioner has failed to show bad faith on the part of the police in failing to perform fingerprint or DNA testing and is thus is not entitled to relief on his claim.  Youngblood, 488 U.S. at 58.

**F. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

Although the Court denies a certificate of appealability, the standard for granting a petitioner an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial

showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.

Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus, declines to issue a certificate of appealability, but grants Petitioner leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: June 6, 2017                           s/Mark A. Goldsmith_____
      Detroit, Michigan                      MARK A. GOLDSMITH
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 6, 2017.

                                           s/Karri Sandusky_____
                                           Case Manager